# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL CHANDLER, both individually and on behalf of himself and all similarly situated persons, | ) ) ) ) | |
| Plaintiffs, | ) | 1:06cv277 |
| v. | ) ) | |
| | ) | **ORDER** |
| THE CHEESECAKE FACTORY RESTAURANTS, INC. d/b/a THE CHEESECAKE FACTORY, | ) ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on Defendant's motion to dismiss (docket no. 4) and on Plaintiffs' motions to remand (docket no. 9) and for class certification (docket no. 12). The parties have responded to the respective motions and, in this posture, the matter is ripe for disposition. For the following reasons, Plaintiffs' motion to remand will be granted, Defendant's motion to dismiss will be denied as moot, and Plaintiffs' motion for class certification will be denied as moot.

## BACKGROUND

The named Plaintiff, Christopher Michael Chandler, initially filed this action in Durham County Superior Court on February 16, 2006. Chandler, as a current tipped employee of Defendant Cheesecake Factory restaurant ("the restaurant"), brought suit on behalf of himself and other similarly situated current and former tipped employees of the restaurant, alleging that the restaurant's mandatory tip-pooling

arrangement violates certain provisions of the North Carolina Wage and Hour Act ("NCWHA"). The amended complaint alleges that Defendant failed to pay all wages and tips accruing to those employees on their regular payday in violation of N.C. GEN. STAT. §§ 95-25.6 and 95-25.22 and the "tip pooling" provisions of 13 N.C. ADMIN. CODE 12 § 0303(h)(2). More specifically, Plaintiffs note that the North Carolina laws require that under any tip-pooling arrangement, the tipped employee must retain at least 85% of the tips. Plaintiffs contend that under the restaurant's mandatory tip-pooling arrangement, tipped employees retain less than the minimum 85%. According to Plaintiffs, this mandatory tip contribution was in the form of a required server tip pool contribution of at least 4.1% of the gross sales generated at each server's tables. Plaintiffs allege that this arrangement violates section 95-25.6 of the Act as well as the accompanying administrative regulations, 13 N.C. ADMIN. CODE 12.0303(h)(2).

On March 24, 2006, Defendant filed a notice of removal to this court, invoking jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332. On April 3, 2006, Plaintiffs filed a motion to remand pursuant to 28 U.S.C. § 1447(c), arguing that Plaintiffs' claims neither arise under federal law, nor is there diversity of citizenship. On April 4, 2006, Plaintiffs filed an amended complaint.[1] In the amended complaint,

---

[1] In the amended complaint, Plaintiffs allege the same violations of the NCWHA as in the original complaint, but they have narrowed the scope of the 13 N.C. ADMIN. CODE 12.0303(h) claim, alleging a specific violation of § 12.0303(h)(2). The apparent purpose is to make clear that their claims do not implicate N.C. GEN. STAT. § 95-25.3(f), which, as explained below, would bring Plaintiffs' claims under the exemptions set forth

Plaintiffs again specifically allege only state claims and remedies against the restaurant. On the same day, Plaintiffs also filed a motion for class certification pursuant to FED. R. CIV. P. 23(b)(3).

## DISCUSSION

### I. The North Carolina Wage and Hour Act

Before addressing the various motions, it is important to first understand the state statutory provisions that are implicated in this case. Here, Plaintiffs assert claims for violations of the North Carolina Wage and Hour Act ("NCWHA"). The NCWHA is modeled after the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and generally contains provisions addressing employees' rights to wages, including overtime, minimum wage, payment of wages, etc. *See Whitehead v. Sparrow Enter.*, 167 N.C. App. 178, 605 S.E.2d 234 (2004). The NCWHA makes clear that each employer is required to pay its employees, with certain exceptions, the federal minimum wage that is set by the FLSA. *See* N.C. GEN. STAT. § 95-25.3. Furthermore, under section 95-25.6, titled "Wage Payment,"

> [e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly. Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance.

N.C. GEN. STAT. § 95-25.6. The NCWHA also contains specific provisions addressing the payment of tips. For instance, subsection (f) of § 95-25.3 states:

in § 95-25.14.

Tips earned by a tipped employee may be counted as wages only up to the amount permitted in section 3(m) of the Fair Labor Standards Act, 29 U.S.C. 203(m), if the tipped employee is notified in advance, is permitted to retain all tips and the employer maintains accurate and complete records of tips received by each employee as such tips are certified by the employee monthly or for each pay period. Even if the employee refuses to certify tips accurately, tips may still be counted as wages when the employer complies with the other requirements of this section and can demonstrate by monitoring tips that the employee regularly receives tips in the amount for which the credit is taken. Tip pooling shall also be permissible among employees who customarily and regularly receive tips; *however, no employee's tips may be reduced by more than fifteen percent (15%) under a tip pooling arrangement.*

N.C. GEN. STAT. § 95-25.3(f) (emphasis added). Furthermore, the North Carolina Administrative Code, specifically 13 N.C. ADMIN. CODE 12.0303(h), sets forth regulations for tips and tip credits under the NCWHA. The "tip pooling" provisions of 13 N.C. ADMIN. CODE 12.0303(h) provide as follows:

(h) "Tip pooling" as used in G.S. 95-25.3(f) is an arrangement in which all or a part of the tips of the contributing employees are combined into a common pool and then divided among the participating employees according to a pre-determined formula. An employee's share of a tip pool is that portion of the total amount in the pool which the employee receives. A tip pooling arrangement is valid under G.S. 95-25.3(f) when:
(1) the contributing employees are notified of the arrangement before the pay period in which it will be used;
(2) the share of each contributing employee is at least 85% of the employee's tips before the employee contributes to the tip pool; and
(3) only employees who customarily and regularly receive tips receive a share from the pool.

Section 12.0303 further states that

the requirement of 95-25.6 that the employer pay "tips accruing to the employee" shall be satisfied if the employee in a tip pooling arrangement receives 85% of the employee's actual tips before pooling or the employee's share received from the pool, whichever is greater.

-4-

> By complying with Subparagraph (h)(2) of this Rule, the employer has also satisfied the provision of G.S. 95-25.3(f) requiring the employer to allow the tipped employee to retain all tips.

Since the NCWHA is expressly modeled after the FLSA, references to the FLSA are scattered throughout the NCWHA. Moreover, the NCWHA makes clear that the FLSA, rather than the NCWHA, covers certain employer-employee relationships. *See Spencer v. Hyde County*, 959 F. Supp. 721 (E.D.N.C. 1997). For instance, the NCWHA contains a section listing certain exemptions. Specifically, § 95-25.14 of the NCWHA provides, in part, that the provisions in the NCWHA addressing minimum wages (§ 95-25.3), overtime (§ 95-25.4), and youth employment (§ 95-25.5), as well as the record-keeping provisions for those exemptions (§ 95-25.15(b)), do not apply to "any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act." The exemptions section of the NCWHA is at issue in this case because Defendant's motion to dismiss, as well as its argument for federal question jurisdiction, are based on its contention that Plaintiffs' claims regarding the tip-pooling arrangements at the restaurant are specifically exempted by § 95-25.14 of the NCWHA and are, instead, covered under the FLSA.

## II. Plaintiffs' Motion to Remand

The court first addresses Plaintiffs' motion to remand since the court must determine whether it has original jurisdiction before it may consider the substantive issues contained in the other motions. In accordance with 28 U.S.C. § 1441, a

Defendant may remove only those cases that could have originally been filed in federal court.[2] As the party seeking removal, Defendant bears the burden of proving the existence of subject matter jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). If jurisdiction is doubtful, a remand is necessary. *Id.* Here, Defendant has argued two bases for removal: diversity jurisdiction and federal question jurisdiction. The court will address each in turn.

## A. Federal Question Jurisdiction

Defendant first argues that removal is proper because this court has federal question jurisdiction over the suit. Pursuant to 28 U.S.C. § 1331, federal question jurisdiction exists when a plaintiff's cause of action "arises under" federal law. Section 1331 has been construed to include cases in which federal law creates the cause of action and those that require the resolution of a substantial question of federal law. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Under the so-called, well-pleaded complaint doctrine, "federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Furthermore, the plaintiff is master of his complaint and can determine whether he will bring suit

---

[2] Title 28, United States Code, Section 1441(a), provides:

any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

-6-

"arising under" state or federal law. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). Under the well-pleaded complaint rule, then, federal courts do not have jurisdiction over state law claims simply because the defendant may or does assert a federal defense. *Caterpillar Inc.*, 482 U.S. at 393. Therefore, in determining whether the claims "arise under" the Constitution or the laws of the United States, the court must examine the allegations in the complaint and ignore potential defenses. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Nevertheless, the Supreme Court has held that, under certain limited circumstances, "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state [law] complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); *see also Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225, 231 (4th Cir. 1993). Thus, when an area of state law is completely preempted, any claim purportedly based on that preempted state law is considered to be from its inception a federal claim arising under federal law. *Caterpillar Inc.,* 482 U.S. at 393.

An examination of the face of Plaintiffs' amended complaint unequivocally shows that Plaintiffs allege state law claims only. That is to say, Plaintiffs allege that the restaurant violated state statutes and Plaintiffs seek only state law remedies. Indeed, the amended complaint makes no mention whatsoever of the FLSA. Moreover, Defendant does not argue here that the FLSA completely preempts state

law in the area of employee wages. Indeed, it is well-settled that the FLSA does not completely preempt state law. *See Morales v. Showell Farms, Inc.*, 910 F. Supp. 244, 248 (M.D.N.C. 1995) (stating that "the FLSA does not cast such a broad pre-emptive net over the area of wage and hour regulation as to convert Morales' state law claims into federal law claims," and "[i]n contrast to the sweeping pre-emptive provision in Section 502(a) of ERISA, the FLSA has a relatively narrow pre-emptive effect"). Defendant maintains, nevertheless, that Plaintiffs' claims necessarily arise under federal law because the FLSA governs the restaurant's tip-pooling requirements that form the basis of Plaintiffs' claims. Defendant argues that since the tip-pooling provisions of 13 N.C. ADMIN. CODE 12.0303(h), on which Plaintiffs base their claims, expressly provide that they are based on tip-pooling arrangements within the meaning of N.C. GEN. STAT. § 95-25.3(f), which, in turn, states that the determination of tips as wages is governed by the application of Section 3(m) of the FLSA, 29 U.S.C. § 203(m), then Plaintiffs' claims arise under the FLSA. Defendant further argues that, pursuant to N.C. GEN. STAT. § 95-25.14(a)(1), Plaintiffs' claims are completely exempted from the NCWHA because Plaintiffs fall under the FLSA's definition of "[a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce."

In response, Plaintiffs do not dispute that they fall under the FLSA's definition of "[a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce." Plaintiffs argue, instead, that they are not suing

-8-

under § 95-25.3(f) and, in turn, they are not exempt from the NCWHA under § 95-25.14. Plaintiffs maintain they are asserting claims solely under N.C. GEN. STAT. § 95-25.6, § 95-25.22, and 13 N.C. ADMIN. CODE 12.0303(h) and that they, therefore, do not fall under the exemptions listed in § 95-25.3. In other words, Plaintiffs specifically deny that their claims implicate the requirement in § 95-25.3(f) that no employee's tips may be reduced by more than 15% under a tip-pooling arrangement.

After considering each party's arguments, the court finds that Plaintiffs' claims do not arise under federal law. The fact that Plaintiffs may be exempt from the NCWHA, which, in turn, would mean that Plaintiffs would not have a claim under the NCWHA, does not also mean that Plaintiffs' claims arise under federal law. It merely means that Plaintiffs' state law claims may be subject to dismissal under the state's laws and that federal law may be a defense to Plaintiffs' state law claims.[3] In other words, even if Defendant has a valid defense to Plaintiffs' state law claim, which requires reference to federal law, this does not mean that Plaintiffs' claims "arise under" the Constitution or the laws of the United States. *See Estate of Rath v. Abbott Labs., Inc.*, 316 F. Supp. 2d 684, 688 (S.D. Ill. 2004). The court notes that at least two district courts in this circuit – one from this district and one from the western district – have found federal question jurisdiction to be lacking where the

---

[3] Incidentally, the court does regard as specious Plaintiffs' argument that 13 N.C. ADMIN. CODE § 12.0303(h) does not necessarily incorporate § 95-25.3(f) and the accompanying § 95-25.14(a) exemptions. Indeed, the "History Note" to § 12.0303(h) specifically cites § 95-25.3, among other sections, as "Authority" for the § 12.0303 regulations.

defendants' removal arguments were similar to, if not the same as, Defendant's removal argument in this case.

First, in *Morales v. Showell Farms, Inc.*, 910 F. Supp. 244 (M.D.N.C. 1995), the plaintiff sued in state court, alleging violations of the NCWHA and seeking class certification. *Id.* at 246. Specifically, the plaintiff alleged that his employer failed to fully compensate him by, in part, forcing him to work off-the-clock, and Plaintiff maintained that this violated the NCWHA, specifically § 95-25.6. *Id.* Although the plaintiff alleged claims under state law only, the complaint did contain references to the FLSA.[4] The defendant removed the case to this court, citing federal question jurisdiction as the basis for removal. On the plaintiff's motion for remand, the *Morales* court found that removal had been improper because the plaintiff's claims did not arise under federal law. In reaching its conclusion, the *Morales* court held that, despite the references to the FLSA in the plaintiff's complaint, an examination of the face of the complaint showed that the plaintiff intended to bring claims for violations of state law only. *Id.* at 248. The court also held that defendant failed to establish that the FLSA so completely preempted the plaintiff's state wage and hour claims that they were automatically converted into federal claims for the purposes of establishing federal question jurisdiction. *Id.* at 247-48. Finally, the court noted that even if the plaintiff's wage and hour claims were preempted by the FLSA, the

---

[4] In this respect, the argument against finding federal question jurisdiction in this case is even stronger than it was in *Morales*, since here Plaintiffs' complaint makes no references whatsoever to the FLSA.

-10-

FLSA evidenced no congressional intent to convert federal preemption from a defense into grounds for federal question jurisdiction.

Ten years after *Morales*, the court for the western district in *Lechner v. Arvinmeritor*, No. 1:05CV74, 2005 WL 1920746 (W.D.N.C. July 14, 2005), also found that removal had been improper in a case where the plaintiff expressly disavowed any FLSA claims and specifically alleged claims under the NCWHA only. In *Lechner*, the plaintiff, proceeding as a class action plaintiff, brought a lawsuit against his employer in state court, alleging that he was not paid wages for all hours worked and that the defendants improperly deducted from his paycheck payment for time spent on meal breaks. *Id.* at *1. The *Lochner* plaintiff asserted state law claims for a violation of the NCWHA, breach of contract, and breach of the duty of good faith and fair dealing. As in *Morales* and this case, the *Lochner* plaintiff specifically asserted violations of § 95-25.6. Moreover, like Plaintiffs in this case, the *Lochner* plaintiff denied any intention of bringing any claim under federal law. The defendant removed to federal court, arguing that the plaintiff's claims arose under federal law. Specifically, the notice of removal stated:

> Although the plaintiff has sued under North Carolina law, any obligation to pay overtime would be controlled by the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., under which they have not sued (*see* N.C. GEN. STAT. § 95-25-14). Therefore, the plaintiff's claims, if any, arise under the laws of the United States, giving this Court jurisdiction under 28 U.S.C. § 1331.

*Id.* at *2.

On the plaintiff's motion to remand, the court found that removal was improper. The court first considered from the face of the well-pleaded complaint whether the complaint alleged any federal claims, and the court found none. The court next considered whether the complaint could be "fairly read" to assert a federal claim, *i.e.*, whether federal law "completely preempted" the removed state law claims. In addressing this issue, the court engaged in a lengthy discussion of *Morales* and concluded that

> in this case, defendants have not shown that the FLSA so completely preempts plaintiffs' state-law claims that they are automatically converted into federal claims. In *Morales,* plaintiff's off-the-clock claim was based on Chapter 95-25.6, just as is plaintiff's claim herein. The undersigned simply can find no reason to depart from the decision of the Middle District in *Morales.*

*Id.* at *5. Finally, the *Lechner* court rejected the defendant's argument that removal was proper on the ground that FLSA regulations governed plaintiff's "off-the-clock" claims and, therefore, were a defense to the plaintiff's state law claims. The court noted that because the federal regulations were not elements of any of the plaintiff's state law claims, any proof on the impact of the FLSA regulations "would be in the form of a defense, and a possible federal defense does not create federal question jurisdiction." *Id.* at *6 (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir. 2005)). Here, as in *Lechner*, Plaintiffs specifically deny any intention of bringing a federal claim. Moreover, the complaint clearly alleges state law claims only. *See also Dwight Newsome v. Labor Ready, Inc.*, Civ. No. 5:02-cv-388-BR(3) (E.D.N.C. Jan.

-12-

21, 2003) (rejecting removal jurisdiction over a NCWHA claim based on failure to pay wages or "tips accruing" under N.C. GEN. STAT. § 95-25.6). This court sees no reason to depart from the well-reasoned opinions of the courts in *Morales* and *Lechner* and finds that the court does not have subject matter jurisdiction based on federal question.

## B. Diversity of Citizenship Jurisdiction

Since the court has determined that federal question jurisdiction is lacking, the only possible basis for jurisdiction is diversity of citizenship. Pursuant to 28 U.S.C. § 1332, diversity jurisdiction exists when the parties are of diverse citizenship and the amount in controversy exceeds $75,000. It is undisputed here that the parties are diverse, and the parties contest only whether the "matter in controversy exceeds $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. As for the burden of proof, the Fourth Circuit has not adopted a specific rule regarding the standard by which a defendant's showing should be judged. The trend, however, is to require the defendant to show by a preponderance of the evidence that the amount in controversy has been met when it is not apparent from the complaint. *Gwyn v. Wal-Mart Stores, Inc.*, 955 F. Supp. 44, 46 (M.D.N.C. 1996). Moreover, it is well settled that "[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough

-13-

if their interests collectively equal the jurisdictional amount." *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 295 (1973) (internal citations and quotation marks omitted). Thus, in a class action, if there are "separate and distinct claims by two or more plaintiffs, the determination of the amount in controversy is based upon each plaintiff's claims and not upon the aggregate." *Glover v. Johns-Manville Corp.,* 662 F.2d 225, 231 (4th Cir. 1981) (*citing Zahn,* 414 U.S. at 293-96). If any named representative plaintiff has a claim in excess of $75,000, however, a federal court has jurisdiction over the entire class based on 28 U.S.C. § 1367, the supplemental jurisdiction statute. *Rosmer v. Pfizer, Inc.,* 263 F.3d 110, 122 (4th Cir. 2001). Therefore, under *Zahn*, as interpreted by *Rosmer,* the requisite amount in controversy for diversity jurisdiction is met in a class action if at least one of the named plaintiffs has a claim exceeding $75,000. *Id.*

The amended complaint alleges that the purported class Plaintiff suffered damages of less than $6,200. Moreover, there is nothing in the complaint to indicate that any of the purported class members have claims exceeding $75,000, and Defendant does not argue that any of the plaintiffs would have individual claims for more than $75,000. Indeed, Defendant concedes that calculation of actual monetary damages sought by each Plaintiff at this time is impracticable and, even if it were possible, it is likely that these claims would be regarded as individual claims against the restaurant, which could not be aggregated to satisfy the amount in controversy. Rather than arguing that the claims of any one plaintiff exceed $75,000, Defendant

-14-

points out that when measuring the amount in controversy in cases involving equitable relief the Fourth Circuit has adopted an "either viewpoint rule," whereby the amount in controversy is measured by the litigation's monetary effect on either party. *Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964). In other words, under the "either-viewpoint" rule, the amount-in-controversy requirement is satisfied if either the gain to the plaintiff or the cost to the defendant is greater than $75,000. *Gonzalez v. Fairgale Props. Co., N.V.* 241 F. Supp. 2d 512, 517 (D. Md. 2002). Defendant claims that "it is abundantly clear" that when applying the Fourth Circuit's "either viewpoint" rule in this case, the cost to the restaurant for compliance with any declaratory judgment entered against it – *i.e.*, changing its wages and tip pooling procedures, etc. – would "far exceed $75,000."

The court notes that the Fourth Circuit has not considered whether or how the "either viewpoint" rule would apply in the context of a putative class action or other multiple-plaintiff case in light of the non-aggregation principles set forth by the United States Supreme Court in *Zahn*. *See Jones v. Allstate Ins. Co.*, 258 F. Supp. 2d 424, 428 (D.S.C. 2003) (discussing the inherent conflict between the "either-viewpoint" rule and the non-aggregation principles announced in *Zahn*). In any event, even if the court were to apply the "either viewpoint" rule to this class action lawsuit, the court finds that Defendant has not met its standard of proof in showing that amount in controversy has been met. First, the court follows the lead of other courts and holds that, even if the "either viewpoint" rule applies in class action lawsuits, the

-15-

claim for declaratory judgment relief must be evaluated on a single plaintiff basis. In other words, as with each plaintiff's claim for monetary damages, each plaintiff's claim for declaratory relief "must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint." *Id.* at 429 (discussing and adopting the Seventh Circuit's approach in *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir. 1997)). Here, Plaintiffs ask the court to "declare that the defendant . . . has violated its obligations under the [NCWHA] . . . to pay the plaintiff[s] and other similarly situated employees of one or more of the defendants their weekly tips accruing when due . . . ." Amended Compl. Prayer for Relief (c). Defendant maintains that the cost of complying with a declaratory judgment would "far exceed $75,000." Defendant has not shown with any specificity, however, that the costs would exceed $75,000 as to each individual class plaintiff if a declaratory judgement were entered in this case. In sum, the court finds that it is without subject matter jurisdiction based on diversity under 28 U.S.C. § 1132. *Accord Dwight Newsome*, Order, Civ. No. 5:02-cv-388-BR(3) (E.D.N.C. Jan. 21, 2003) (in a NCWHA case on almost identical facts, rejecting defendant's argument that a declaratory judgment would require defendant to spend far in excess of $75,000 to comply with the judgment). In sum, because the court does not have jurisdiction under either 28 U.S.C. § 1331 or 28 U.S.C. § 1332, Plaintiff's motion to remand will be granted.

-16-

## III. The Remaining Motions

Because this case will be remanded to state court for the reasons set forth above, the court does not address either Defendant's substantive motion to dismiss or Plaintiffs' motion for class certification.[5]

## IV. Plaintiffs' Request for Attorney's Fees and Costs under 28 U.S.C. § 1447(c)

Finally, the court notes that Plaintiffs seek an award of attorney's fees and costs in bringing this motion pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The court finds that an award of costs and fees is inappropriate because Defendant acted in apparent good faith and on a colorable claim of removal; therefore, the court will

---

[5] In any event, even if Defendant's motion to dismiss the original complaint were not mooted by the court's decision to remand, it has already been mooted by Plaintiffs' filing of the amended complaint. Under FED. R. CIV. P. 15(a), "a party may, as a matter of right, amend its complaint once before the filing of a 'responsive pleading' or the entry of final judgment following dismissal of its action." Furthermore, it is black letter law that when the parties amend the pleadings, the amended pleadings supersede the original pleadings; thus, a motion to dismiss directed at a pleading that is no longer operative becomes moot. *See Turner v. Kight*, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (denying as moot the defendants' motions to dismiss the original complaint on the basis that the amended complaint superseded the original complaint). Plaintiffs filed their original complaint in state court on February 16, 2006, and Defendant filed its notice of removal on March 24, 2006. On the same day, Defendant filed a motion to dismiss the original complaint. On April 3, 2006, Plaintiffs filed their motion to remand to state court. Then, on April 4, 2006, before Defendant filed a responsive pleading, Plaintiffs filed their amended complaint. Since no responsive pleading had been served when Plaintiffs filed the amended complaint on April 4, 2006, the complaint was amended as a matter of right, the amended complaint superseded the original complaint, and the amended complaint rendered Defendant's motion to dismiss moot.

deny Plaintiffs' request for attorney's fees and costs.  *Accord Griffin v. Holmes*, 843 F. Supp. 81, 88 (E.D.N.C. 1993).

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion to remand (docket no. 9) is **GRANTED**.[6]  Moreover, Defendant's motion to dismiss (docket no. 4) and Plaintiffs' motion for class certification (docket no. 12) are both **DENIED** as moot.  Finally, Plaintiffs' request for attorney's fees and costs is denied.

In keeping with the authority cited in the margin, this order **will be stayed for a period of 15 days to allow any party to object and seek a review by the district judge**.

WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

July 5, 2006

---

[6]  For a discussion of the authority of a Magistrate Judge to issue an order on remand because a motion for remand is a non-dispositive pre-trial motion, *see Johnson v. Wyeth*, 313 F. Supp. 2d 1272 (N.D. Ala. 2004) (citing and discussing *Roell v. Withrow*, 538 U.S. 580 (2003)); *Wyatt v. Walt Disney World, Co.*, No. 5:97CV116-V, 1999 WL 33117255 (W.D.N.C. July 26, 1999).

-18-